[Crim. No. 19823. Apr. 26, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY M. FOGELSON, Defendant and Appellant.

160

**COUNSEL**

Fleishman, Brown, Weston & Rohde, Stanley Fleishman and Barry A. Fisher for Defendant and Appellant.

Burt Pines, City Attorney, and Ward G. McConnell, Assistant City Attorney, for Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—Appellant, Henry M. Fogelson, was convicted by the court of a misdemeanor, soliciting contributions on public property without a permit, conduct which violated a Los Angeles ordinance.[1] The issue presented to this court is whether this ordinance imposes an impermissible restriction upon free speech and the free exercise of religion, as guaranteed by the First and Fourteenth Amendments to the United States Constitution and by article I, sections 2 and 4 of the California Constitution. This court concludes that the ordinance is invalid on its face because it gives administrative officials unlimited discretion to grant or deny permission to engage in constitutionally protected forms of solicitation.

I

The facts are not in dispute. Appellant belongs to the Hare Krishna faith, the tenets of which require its adherents to go to public places to distribute books and pamphlets containing the teachings of the faith. Persons, who accept this literature, are asked to make financial contributions to defray the expenses of publishing such materials and of carrying on other Hare Krishna activities.

A Los Angeles policeman testified that on July 10, 1974, he was on duty at the Los Angeles International Airport, a facility owned and

---

[1]Section 42.14.1 of the Los Angeles Municipal Code provides as follows: "No person shall seek, beg, or solicit custom, patronage, sales, alms or donations for himself or on behalf of any person in any manner or for any purpose in any building, or in or on any property or premises under the control of this City without the written permission of the head of the department having jurisdiction over the building or grounds where such solicitation is to be made. Where solicitation is to be made of employees of a department within the offices and spaces in public buildings assigned to that department, such solicitation is prohibited unless written permission is obtained from the head of the department."

operated by the City of Los Angeles. He was informed that a Hare Krishna adherent was soliciting in the main lobby of the Trans World Airlines terminal. Upon arriving at that terminal, he saw appellant, in traditional Hare Krishna dress, offering books to persons passing through the area. The officer warned appellant that he could not lawfully solicit without a permit and advised him that he could try to obtain one in the tower building of the airport.[2] After appellant replied that he did not need a permit because he was practicing his religion, the police officer stated that he was going to follow appellant and listen to what he said. A short time later, appellant approached a bystander and handed him a Hare Krishna book. According to that bystander's testimony, appellant told him he "could have [the book], but [he] would have to give sort of a contribution, something about meals for the needy or something like that." The police officer then arrested appellant and seized the Hare Krishna literature in his possession.

Following appellant's conviction in the municipal court of violating the Los Angeles solicitation ordinance (see fn. 1, *ante*), the appellate department of the superior court reversed. Thereafter, the Court of Appeal transferred the case to itself on its own motion (Cal. Rules of Court, rule 62(a)) and affirmed the conviction. This court granted appellant's petition for hearing. (Cal. Rules of Court, rule 28(a).)

## II

Appellant's principal contention is that the Los Angeles solicitation ordinance is facially invalid because it fails to provide any standards for granting or refusing permission to engage in solicitation, many forms of which are constitutionally protected conduct. ▮ ▮▮▮▮ In response, the city attorney argues that appellant's own act of soliciting contributions was not protected conduct and, therefore, he may not challenge the facial validity of the ordinance.[3]

---

[2]Appellant could not in fact have obtained a permit because, according to the testimony of a custodian of the business records of the airport board, the board "does not issue permits to individuals to solicit or peddle, by policy."

[3]There is no merit to the city attorney's additional contention that appellant does not have standing to challenge the constitutionality of section 42.14.1 because he did not apply for a permit under that ordinance. "It is . . . settled that petitioners have standing to attack the constitutional validity of [an] ordinance which they are charged with having violated even though they have failed to allege that they attempted to comply with its permit requirement. (*Dillon* v. *Municipal Court, supra,* 4 Cal.3d 860, 866, fn. 6 [94 Cal.Rptr. 777, 484 P.2d 945], and cases collected therein; see also *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 687-688 [68 Cal.Rptr. 721, 441 P.2d 281].) 'Standing is

██ This court need not determine whether appellant was engaged in constitutionally protected activity in order to entertain his contention that the ordinance is invalid on its face. It is generally true that an individual charged with violating a law or regulation may attack the constitutionality of that law or regulation only as it applies to the facts of his or her case. However, when the law or regulation is challenged on its face as substantially encroaching upon First Amendment protected activity, a court may consider the measure as it applies to others. (See, e.g., *Gooding* v. *Wilson* (1972) 405 U.S. 518 [31 L.Ed.2d 408, 92 S.Ct. 1103]; *Bigelow* v. *Virginia* (1975) 421 U.S. 809, 815 [44 L.Ed.2d 600, 608, 95 S.Ct. 2222] ["This Court often has recognized that a defendant's standing to challenge a statute on First Amendment grounds as facially overbroad does not depend upon whether his own activity is shown to be constitutionally privileged."]; *Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 611-613 [37 L.Ed.2d 830, 839-841, 93 S.Ct. 2908]; *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 338-339 [38 Cal.Rptr. 625, 392 P.2d 385]; *Canon* v. *Justice Court* (1964) 61 Cal.2d 446, 450 [39 Cal.Rptr. 228, 393 P.2d 428]; see also *Burton* v. *Municipal Court, supra,* 68 Cal.2d at pp. 688 ["It is settled that a person has the standing to challenge a statute on the ground that it delegates overly broad licensing authority to an administrative officer whether or not his conduct could be proscribed by a properly drawn enactment . . . ."], pp. 696-697.)

Such review is permitted in these circumstances because case-by-case adjudication may not fully vindicate the constitutional rights at stake. The actual application of an overbroad ordinance is not its only vice; it may also have a substantial deterrent impact or "chilling effect" on the exercise of constitutional rights. Faced with a regulation that threatens to impose sanctions upon free speech or the free exercise of religion, significant numbers of persons may elect not to exercise those rights rather than undergo the rigors of litigation and the risk of eventual punishment. While it is crucial that persons not be punished for having exercised their rights of free speech and religion,[4] it is equally important

recognized in such a situation because of the dangers inherent in tolerating, in the realm of the First Amendment, the existence of a penal statute susceptible of sweeping and improper application. [Citations.]' (*Burton* v. *Municipal Court, supra,* 68 Cal.2d at p. 688.)" (*Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77, 82, fn. 4 [112 Cal.Rptr. 777, 520 P.2d 1].)

[4]In order to deal promptly with allegedly overbroad regulatory schemes, this court has often entertained pretrial petitions for extraordinary relief from prosecutions based on such allegedly overbroad or otherwise facially invalid regulations. (E.g., *Dulaney* v. *Municipal Court, supra,* 11 Cal.3d at pp. 81-82.)

that they not be deterred from such conduct. In this regard the United States Supreme Court has stated: "Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser. [Citation.] For example, we have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. [Citations.] We have fashioned·this exception to the usual rules governing standing . . . because of the '. . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' *NAACP v. Button* [(1963) 371 U.S. 415, 433 (9 L.Ed.2d 405, 418, 83 S.Ct. 328)]. If the rule were otherwise, the contours of regulation would have to be hammered out case by case[5]—and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of regulation. [Citation.] By permitting determination of the invalidity of these statutes without regard to the permissibility of some regulation on the facts of particular cases, we have, in effect, avoided making vindication of freedom of expression await the outcome of protracted litigation." (*Dombrowski* v. *Pfister* (1965) 380 U.S. 479, 486-487 [14 L.Ed.2d 22, 28-29, 85 S.Ct. 1116].)

■ There can be little question that the ordinance challenged here lends itself to a substantial number of unconstitutional applications.[6] This ordinance purports to regulate a very broad range of solicitation

[5]Moreover, the unpredictability of such case-by-case judicial evaluation of overbroad statutes "would inject an element of vagueness. . . . [T]he plain words would . . . become uncertain in meaning . . . if ccurts proceeded on a case-by-case basis to separate out constitutional from unconstitutional areas of coverage." (*Aptheker* v. *Secretary of State* (1964) 378 U.S. 500, 516 [12 L.Ed.2d 992, 1003, 84 S.Ct. 1659]; see also Note, *The First Amendment Overbreadth Doctrine* (1970) 83 Harv.L.Rev. 844, 871-872; Note, *The Void-for-Vagueness Doctrine in the Supreme Court* (1960) 109 U.Pa.L.Rev. 67.)

[6]The city attorney contends that a facial overbreadth attack will not lie against the ordinance involved here because it does not "on its face purport to regulate First Amendment activity." (See *Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72-73 [101 Cal.Rptr. 768, 496 P.2d 840].) This contention is not persuasive. The ordinance does in fact by its terms attempt to regulate virtually all forms of solicitation, many of which constitute First Amendment protected activity. (See discussion, *infra.*) Moreover, the test of a regulation's overbreadth turns on the extent to which it lends itself to improper applications to protected conduct, not whether it explicitly refers to speech or religion. (See, e.g., *Martin* v. *Struthers* (1943) 319 U.S. 141 [87 L.Ed. 1313, 63 S.Ct. 862, 882] [striking down an ordinance prohibiting canvassers or solicitors from knocking on the front door of a resident's home or ringing the doorbell]; see also *Schneider* v. *State* (1939) 308 U.S. 147, 161 [84 L.Ed. 155, 164-165, 60 S.Ct. 146].)

activities—including the acts of seeking, begging or soliciting custom, patronage, sales, alms or donations "in any manner or for any purpose." Many forms of solicitation are constitutionally protected. These include solicitation of religious contributions (e.g., *Cantwell* v. *Connecticut* (1940) 310 U.S. 296 [84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352]); solicitation of political contributions (e.g., *Hynes* v. *Mayor of Oradell* (1976) 425 U.S. 610 [48 L.Ed.2d 243, 96 S.Ct. 1755]); solicitation of union memberships (e.g., *In re Porterfield* (1946) 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675]); and solicitation of sales of protected literature (e.g., *Lovell* v. *Griffin* (1938) 303 U.S. 444 [82 L.Ed. 949, 58 S.Ct. 666]).[7] All of these areas fall within the plain language of the Los Angeles ordinance. Thus, it is evident that the ordinance reaches substantial areas of protected speech and religious activity.

The mere fact that the challenged ordinance attempts to regulate constitutionally protected speech and religious activity does not, of course, render it unconstitutional. Speech and religious exercise are not wholly exempt from controls. (*Cantwell* v. *Connecticut, supra,* 310 U.S. at pp. 303-304 [84 L.Ed. at pp. 1217-1218].) The state may, for example, reasonably regulate the time, place and manner of engaging in solicitation in public places. (*Id.,* at p. 304 [84 L.Ed. at p. 1218]; see also *Cox* v. *New Hampshire* (1941) 312 U.S. 569 [85 L.Ed. 1049, 61 S.Ct. 762, 133 A.L.R. 1396].) The state may also reasonably and narrowly regulate solicitations in order to prevent fraud (see, e.g., *Gospel Army* v. *City of Los Angeles* (1945) 27 Cal.2d 232 [163 P.2d 704]) or to prevent undue harassment of passersby or interference with the business operations being conducted on the property (see, e.g., *In re Hoffman* (1967) 67

---

[7]Although "commercial speech" has not traditionally enjoyed constitutional protection, commercial solicitation or promotion of constitutionally protected written works is protected as an incident to the First Amendment value of the underlying speech or activity. Thus, this court recently held overbroad a Los Angeles ordinance banning sidewalk sales of "merchandise," including most types of printed matter. (*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 503-505 [134 Cal.Rptr. 668, 556 P.2d 1119]; see also *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 265-266 [11 L.Ed.2d 686, 697-698, 84 S.Ct. 710, 95 A.L.R.2d 1412] [paid newspaper advertisement soliciting funds for civil rights movement held protected]; *Murdock* v. *Pennsylvania* (1943) 319 U.S. 105, 111 [87 L.Ed. 1292, 1297-1298, 63 S.Ct. 870, 891, 146 A.L.R. 81] [petitioners' activity protected even though they "sold" rather than "donated" their religious literature].)

Three recent decisions have enlarged the constitutional protection to be given to "commercial speech." (*Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691]; *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817]; *Bigelow* v. *Virginia, supra,* 421 U.S. 809; see Comment, *First Amendment Protection for Commercial Advertising: The New Constitutional Doctrine* (1976) 44 U.Chi.L.Rev. 205.) These decisions suggest that even the distinctly commercial forms of solicitation covered by the ordinance at issue may be entitled to at least some constitutional protection.

Cal.2d 845, 851-852 [64 Cal.Rptr. 97, 434 P.2d 353]).[8] However, in the area of First Amendment freedoms, including constitutionally protected forms of solicitation, the touchstone of regulation must be precision —narrowly drawn standards closely related to permissible state interests. (See, e.g., *Welton* v. *City of Los Angeles, supra,* 18 Cal.3d at p. 504; *Van Nuys Pub. Co.* v. *City of Thousand Oaks* (1971) 5 Cal.3d 817, 820-821 [97 Cal.Rptr. 777, 489 P.2d 809].)

In applying this principle specifically to ordinances requiring the issuance of permits for the exercise of First Amendment rights, this court concluded that such ordinances "will not offend the Constitution if they regulate only the time, place, manner and duration [of such expression] and if they are fairly administered by officials within the range of narrowly limited discretion. On the other hand, any procedure which allows licensing officials wide or unbounded discretion in granting or denying permits is constitutionally infirm because it permits them to base their determination on the content of the ideas sought to be expressed." (*Dillon* v. *Municipal Court, supra,* 4 Cal.3d at pp. 869-870; see also *Dulaney* v. *Municipal Court, supra,* 11 Cal.3d at p. 84.)

Numerous regulatory schemes governing the issuance of permits or licenses have been invalidated for failure to provide the licensing officials with the requisite definite, objective guidelines for issuing the licenses. Those measures which have been struck down include a vaguely worded notice ordinance regulating house-to-house canvassing and solicitation (*Hynes* v. *Mayor of Oradell, supra,* 425 U.S. 610); a vague licensing measure controlling similar solicitations (*Schneider* v. *State, supra,* 308 U.S. 147); a standardless permit system governing distribution of literature in public (*Lovell* v. *Griffin, supra,* 303 U.S. at p. 451 [82 L.Ed. at p. 953]); a standardless permit arrangement governing the posting of bills on utility poles (*Dulaney* v. *Municipal Court, supra,* 11 Cal.3d at p. 80); a standardless license requirement for book store operation (*Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 662 [97 Cal.Rptr. 320, 488 P.2d 648]); a vague permit scheme governing motion picture projection (*Burton* v. *Municipal Court, supra,* 68 Cal.2d at

[8]However, it is important to recognize that individuals in public places cannot expect the same degree of protection from contact with others as they are entitled to in their own homes. " 'The man who goes . . . to a public place must expect to meet and mingle with all classes of people. He cannot ask, to suit his caprice or prejudice or social views, that this or that man shall be excluded because he does not wish to associate with them.' " (*In re Cox* (1970) 3 Cal.3d 205, 224 [90 Cal.Rptr. 24, 474 P.2d 992], quoting *Ferguson* v. *Gies* (1890) 82 Mich. 358, 367-368 [46 N.W. 718].)

p. 692); and a standardless permit scheme regulating parades (*Dillon* v. *Municipal Court, supra,* 4 Cal.3d at p. 870).

 In the present case, Los Angeles Municipal Code section 42.14.1 contains absolutely no standards to guide licensing officials in exercising their discretion to grant or deny applications to solicit on city property.[9] Thus, the ordinance gives officials unbridled power to prohibit constitutionally protected forms of solicitation. "Since statutes which accord officials excessive discretion are unconstitutional on their face, a fortiori, those which vest unlimited discretionary power to issue or deny permits to engage in First Amendment activities are unconstitutional." (*Perrine* v. *Municipal Court, supra,* 5 Cal.3d at p. 662.) Therefore, Los Angeles Municipal Code section 42.14.1 is unconstitutional on its face.

Although this court strives to construe legislative enactments so as to bring them into line with constitutional requirements (see, e.g., *Welton* v. *City of Los Angeles, supra,* 18 Cal.3d at pp. 505-507), the sweeping and unfettered power conferred by this ordinance does not lend itself to such a limiting construction (see, e.g., *Van Nuys Pub. Co.* v. *City of Thousand Oaks, supra,* 5 Cal.3d at p. 828). Moreover, this court should not, and does not, undertake the essentially legislative task of specifying which of the legitimate municipal interests in regulating solicitation are to be included in permit conditions, nor how such conditions might be drafted. (See, e.g., *United States* v. *Robel* (1967) 389 U.S. 258, 267-268 [19 L.Ed.2d 508, 515-517, 88 S.Ct. 419].)

Having held the ordinance to be unconstitutional on its face, this court need not address the other contentions urged by the parties.

The judgment of conviction is reversed.

Tobriner, J., Richardson, J., Manuel, J., and Sullivan, J.,* concurred.

---

[9]The ordinance appears to extend to city streets and parks, clearly First Amendment forums (see, e.g., *Hague* v. *C. I. O.* (1939) 307 U.S. 496, 515 [83 L.Ed. 1423, 1436, 59 S.Ct. 954]; *Kunz* v. *New York* (1951) 340 U.S. 290, 293 [95 L.Ed. 280, 283-284, 71 S.Ct. 312]), as well as to "public" areas in municipal buildings, which are also appropriate areas for exercise of protected activity (see *In re Hoffman, supra,* 67 Cal.2d at pp. 850-851).

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

**MOSK, J.**—I concur.

I agree with the majority that the city ordinance is fatally flawed on its face because it lacks standards to guide city functionaries in the issuance or rejection of permits to solicit funds on public property.

In concurring with the opinion, however, I emphasize that this defendant's conduct is not impervious to reasonable restraint. Indeed, there was an element of fraud in his modus operandi. Defendant did not forthrightly solicit contributions to his religious order; to persons approached at the airport he purported to beg for alms to buy meals for needy children. On the stand, however, he conceded his actual intent was to sell books, the funds therefrom being appropriated not to needy children but to maintain his order's preaching program. Nevertheless he was not charged with fraud or theft, but with violation of the municipal code section on solicitation, and thus we may consider only that offense.

If defendant was actually seeking aid for needy children, his conduct could be regulated or proscribed. It has been held that begging and soliciting for alms do not enjoy absolute constitutional protection. (*Ulmer* v. *Municipal Court* (1976) 55 Cal.App.3d 263, 266 [127 Cal.Rptr. 445].) And if he was selling literature for religious sustenance, his practices—as distinguished from his beliefs—are also subject to reasonable circumscription. (*People* v. *Woody* (1964) 61 Cal.2d 716, 718 [40 Cal.Rptr. 69, 394 P.2d 813].) As this court declared in *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460, 470 [171 P.2d 8], there is no question "that a person is free to hold whatever belief his conscience dictates, but when he translates his belief into action he may be required to conform to reasonable regulations which are applicable to all persons and are designed to accomplish a permissible objective." The United States Supreme Court put it succinctly: religious liberty "embraces two concepts—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be." (*Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 303-304 [84 L.Ed. 1213, 1217-1218, 60 S.Ct. 900, 128 A.L.R. 1352].) To the same view is Justice Traynor's exhaustive opinion for this court in *Gospel Army* v. *City of Los Angeles* (1945) 27 Cal.2d 232 [163 P.2d 704].

Thus it is clear to me that while the instant municipal ordinance falters because of constitutional infirmity, it is not impossible for the city to reasonably regulate the public conduct of mendicants, including those

who purport to be motivated by religious fervor. Nothing in the court's opinion should deter the city from appropriately legislating if the public welfare so dictates.

Clark, J., concurred.