[Civ. No. 41690. First Dist., Div. Three. Dec. 14, 1978.]

FARZAD GHAFARI, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO JUDICIAL
DISTRICT OF THE CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

[Civ. No. 41695. First Dist., Div. Three. Dec. 14, 1978.]

HOMAYOON MAJD, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO JUDICIAL
DISTRICT OF THE CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

258

## COUNSEL

Jeffrey G. Lewis, Larson, Stang & Weinberg, Donald J. Stang, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Don Jacobson, Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

**FEINBERG, J.**—In these consolidated appeals, we are confronted with a single issue—is Penal Code section 650a constitutional?

The facts, for purposes of these appeals, are not in dispute.

Appellants are Iranian nationals, students in this country and members of the Iranian Students' Association (I.S.A.). It is an understatement to say that appellants and the I.S.A. are vigorously opposed to the present government in Iran. One of the views held by the I.S.A. is that the regime in Iran is maintained in power by reason of the support afforded by the United States government. Thus, members of the I.S.A. demonstrate, picket, hand out leaflets and so on, not only to show their own disaffection from their government, but to make known publicly their

reasons for their views. I.S.A. hopes to affect public opinion, gain public sympathy, and thereby affect our present foreign policy vis-à-vis Iran.

Appellants have also alleged, and for purposes of this appeal, it is not denied that, for good reason, they are fearful that if their identity became known as I.S.A. members and demonstrators, retaliatory measures of an unpleasant nature may be taken against them here and against their relatives in Iran by agents of the Iranian government.

On August 24, 1976, on the sidewalk in front of the Iranian Consulate in San Francisco, appellant Ghafari was engaged in peaceful picketing, with other pickets, when he was arrested for violating Penal Code section 650a[1] on the ground that he was picketing in disguise by placing a leaflet between his glasses and face for the purpose of concealing his identity.

On October 1, 1976, appellant Majd was arrested for the same reason, in the same area, under similar circumstances.

Appellants have alleged and, again, for purposes of this appeal, it is not controverted that, had they known they could not protect their anonymity while demonstrating, they would not have demonstrated nor will they participate in demonstrations in the future if they cannot do so without disclosure of their identity.

The cases come before us having followed the same route. Each appellant demurred in municipal court to the charge of having violated section 650a. Each demurrer was overruled. Each appellant then petitioned the superior court for a writ of prohibition directed to the municipal court. The superior court issued an alternative writ in each case and then after hearing, denied each petition; these appeals followed.

*Penal Code section 650a is unconstitutional on its face under the United States Constitution because it is overbroad and vague and it denies equal protection of the laws.*

*The statute.*

Section 650a provides: "It is a misdemeanor for any person, either alone or in company with others, to appear on any street or highway, or in other public places or any place open to view by the general public, with his face partially or completely concealed by means of a mask or

---

[1]Hereafter, all sections cited are to the Penal Code.

other regalia or paraphernalia, with intent thereby to conceal his identity. This section does not prohibit the wearing of such means of concealment in good faith for the purposes of amusement, entertainment or in compliance with any public health order." The statute was originally enacted in 1923 (Stats. 1923, ch. 153, §§ 1, 2, p. 316) in substantially its present form. It was not placed in a code, and it was never construed in a reported decision. It was reenacted in its present form and was codified as section 650a in 1953 (Stats. 1953, ch. 32, § 18, p. 641). One reported decision has discussed the statute, but the constitutionality of it was not in issue and was not considered. (*In re Martin* (1963) 221 Cal.App.2d 14 [34 Cal.Rptr. 299]; see also *People* v. *Horner* (1955) 137 Cal.App.2d 615, 621, fn. 1 [290 P.2d 902] [mentioning enactment of the section].) The issues raised herein are of first impression.

### *Section 650a is overbroad.*

The rights of freedom of speech, peaceful assembly and free association[2] are unquestionably protected activities which "lie at the foundation of a government based upon the consent of an informed citizenry . . . ." (*Bates* v. *Little Rock* (1960) 361 U.S. 516, 522-523 [4 L.Ed.2d 480, 485, 80 S.Ct. 412]; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 852 [143 Cal.Rptr. 695, 574 P.2d 766].)  ■  Appellants contend that the statute is overbroad on its face because it flatly prohibits anonymity under circumstances where these protected activities may be involved and because the restriction is not required by a compelling state interest nor is it implemented in the least restrictive manner possible. We agree.

The proposition that, under certain circumstances, anonymity is essential to the exercise of constitutional rights is not a novel one. "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." (*N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449, 462 [2 L.Ed.2d 1488, 1499-1500, 78 S.Ct. 1163]; *Britt* v. *Superior Court, supra,* 20 Cal.3d at p. 853.)[3] "Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws *either anonymously or not at all.*" (Italics added.) (*Talley* v. *California* (1960) 362 U.S. 60, 64 [4 L.Ed.2d 559, 563, 80 S.Ct. 536].)

---

[2]United States Constitution, First and Fourteenth Amendments.

[3]We note that in both *N.A.A.C.P.* and *Britt* the right in question was that of association, whereas here the principal issue involves the freedom of speech. These rights are so interrelated, however, that decisions involving the former are relevant and persuasive in

The People argue that section 650a in no way restricts the legitimate exercise of First Amendment freedoms. The assertion is patently in error. The fact that the state, through this statute, takes no direct action to restrict the exercise of constitutional rights is not dispositive, for in the area of First Amendment liberties, "abridgement of such rights, even though unintended, may inevitably follow from varied forms of governmental action." (*N.A.A.C.P.* v. *Alabama, supra,* 357 U.S. at p. 461 [2 L.Ed.2d at p. 1499]; *Britt* v. *Superior Court, supra,* 20 Cal.3d at p. 852.) Nor is it persuasive for the state to argue that the restraint upon appellants' rights would come about as a result of private, as opposed to state, action. "The crucial factor is the interplay of governmental and private action, for it is only after the initial exertion of state power represented by . . . [enforcing section 650a] that private action takes hold." (*N.A.A.C.P.* v. *Alabama, supra,* at p. 463 [2 L.Ed.2d at p. 1500]; see also *People* v. *Fogelson* (1978) 21 Cal.3d 158, 164, fn. 6 [145 Cal.Rptr. 542, 577 P.2d 677]; *Huntley* v. *Public Util. Com.* (1968) 69 Cal.2d 67, 73 [69 Cal.Rptr. 605, 442 P.2d 685].) Thus, here, by enforcing section 650a, the state either inhibits the exercise of free speech or exposes the speaker who dares, to retaliation by a foreign government.

It is clear that in flatly prohibiting anonymous public appearances by persons exercising their First Amendment rights, section 650a sweeps too broadly. It must be emphasized that appellants do not assert that there is an absolute right to anonymity while engaging in First Amendment activities. Nor do they fail to recognize that the state has a legitimate interest in crime prevention and detection, and that under certain circumstances concealment of identity may give rise to law enforcement problems. But, as they point out, other statutes presently exist which prohibit illegitimate and improper use of concealment of identity and any dangers potentially arising from First Amendment activity which is undertaken by masked participants.

For example, section 185 provides:

"It shall be unlawful for any person to wear any mask, false whiskers, or any personal disguise (whether complete or partial) for the purpose of:

the case at bench. The United States Supreme Court has recognized that there is a "close nexus between the freedoms of speech and assembly," and that "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." (*N.A.A.C.P.* v. *Alabama, supra,* 357 U.S. at p. 460 [2 L.Ed.2d at p. 1498].)

"One. Evading or escaping discovery, recognition, or identification in the commission of any public offense.

"Two. Concealment, flight, or escape, when charged with, arrested for, or convicted of, any public offense. Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor." The People argue that section 185 is directed at a different stage of criminal activity than is section 650a. They claim that section 185 is directed at the "subsequent criminal offenses which 650a was designed to discourage." At oral argument, the People claimed that section 185 does not come into play until after a crime has been committed. This argument is unsupported by citation to applicable authority. Section 185 prohibits the use of a mask for the purpose of "evading or escaping . . . recognition, or identification in the commission of any public offense." The plain meaning of this language covers the situation where a mask is worn prior to the actual commission of the offense.

The People argue that it is absurd to compel the state "to sit back and wait until : . . [appellants] and their 200 confederates have stormed the Iranian Embassy, sacked it, and then been captured before it is entitled to know even what . . . [they] look like." The notion that appellants and their codemonstrators were about to storm the embassy and sack it is a "red herring"; it finds no support whatsoever in the record, as the People must be aware in that they stipulated to the facts set forth above. Had there been such an attack, or had there been any evidence that appellants planned to do so, and had they been masked for such criminal purposes, they would have been in violation of section 185. Furthermore, without delineating them all, a number of other penal statutes would have come into play, such as section 404 (riot), sections 406-407 (rout, unlawful assembly), section 415 (disturbing the peace), section 416 (refusing to disperse), section 647, subdivision (e) (refusal to identify self to police officer), section 647c (obstruction of thoroughfares and public places), and sections 726-727 (arrest after refusal to disperse), thereby providing the police with the legal armamentarium to deal effectively with such a disturbance.

Therefore, we are in agreement with appellants' claim that the wearing of a mask per se does not affect adversely any legitimate state interest. We conclude that the blanket prohibition of section 650a serves no legitimate law enforcement function and is unconstitutionally overbroad, both for the same reason—the state's interests are fully protected by more narrowly drawn prohibitions. (*Britt* v. *Superior Court, supra,* 20 Cal.3d at pp. 855-856.)

*Section 650a is vague.*

■ *Standing.* The People argued that appellants' conduct was precisely proscribed by the statute and that therefore they do not have standing to raise the vagueness issue. We disagree for two reasons: First, it is not clear that petitioners' conduct was precisely proscribed. They were arrested for covering their faces by placing leaflets behind their eyeglasses. Other demonstrators covered their faces with picket signs and leaflets; some wore ski masks. Although a ski mask is clearly a "mask" within the meaning of the statute, to argue that a leaflet placed behind eyeglasses is "precisely proscribed" by the terms "regalia or paraphernalia" begs the question.

Second, assuming that appellants' conduct was precisely proscribed by the statute, this is the kind of case wherein an exception from traditional rules of standing to raise constitutional issues applies, because "the very existence of . . . [section 650a] may cause persons not before the Court to refrain from engaging in constitutionally protected speech or expression." (*Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 60 [49 L.Ed.2d 310, 320, 96 S.Ct. 2440]; *id.*, at pp. 59-60, fn. 17 [49 L.Ed.2d at pp. 319-320]; *People* v. *Fogelson, supra,* 21 Cal.3d 158, 162-165.)

*The merits.* ■ A penal statute is void on its face if it forbids "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) Vague statutes offend several important values, as explained by the United States and California Supreme Courts: " 'First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know *what* is prohibited, so that he may act accordingly. . . . Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit *standards* for those who apply them. . . . Third, . . . where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms" . . . [u]ncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone." . . . than if the boundaries of the forbidden areas were clearly marked.' " (*Braxton* v. *Municipal Court* (1973) 10 Cal.3d 138, 151 [109 Cal.Rptr. 897, 514 P.2d 697], quoting *Grayned* v. *City of Rockford* (1972) 408 U.S. 104 at pp. 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294].) .

■ Appellants claim that section 650a is vague in two respects: It applies to a face "partially or completely concealed by means of a mask or other regalia or paraphernalia," and it contains an exception for "amusement" or "entertainment" purposes. The People argue that the statute is not vague because it gives clear notice that one is prohibited from appearing in public "with one's face covered by a mask or other means of disguise for the purpose of concealing one's identity." They concede, by way of example, that celebrities wishing to conceal their identity from autograph seekers and the general public are committing a public offense if they don large hats and/or sunglasses for this purpose.

We do not find the language "a mask or other regalia or paraphernalia" as unambiguous as the People represent. While it is arguable that this portion of the statute could be given a narrow construction (see *Braxton v. Municipal Court, supra,* 10 Cal.3d at p. 144) and that the quoted portion could be read as meaning "covered by a mask or other means of disguise" (the People's proposed construction), the vagueness of the phrase "purposes of amusement [and] entertainment" cannot be cured.

It is well established that communication for amusement and entertainment purposes is protected by the First Amendment as fully as is communication for the exposition and exchange of ideas. There are several reasons for this view, the principal one being pragmatic—it is impossible to draw a clear line between the two areas.[4] "The line between the informing and the entertaining is too elusive for the protection of . . . [First Amendment rights]. Everyone is familiar with instances of propaganda through fiction. What is one man's amusement, teaches another's doctrine." (*Winters* v. *New York* (1948) 333 U.S. 507, 510 [92 L.Ed. 840, 847, 68 S.Ct. 665].) For this reason, "courts must . . . cast a wide net over all forms of communication in order to protect that which is of potential political relevance." (*In re Giannini, supra,* 69 Cal.2d 563, 570, fn. 3.)

It follows that the "amusement [and] entertainment" exception is inherently vague. It does not give a citizen notice of what is prohibited; it fails to set standards for law enforcement officers; and it will have a chilling effect on the exercise of constitutional rights. (*Braxton* v. *Municipal Court, supra,* 10 Cal.3d at p. 151.) Consider, for example, that

[4]The other reason is that works of art are considered the highest form of communication and that the life of the imagination and intellect is of comparable import to the preservation of the political process. (*In re Giannini* (1968) 69 Cal.2d 563, 570, fn. 3 [72 Cal.Rptr. 655, 446 P.2d 535], cert. den. (1969) 395 U.S. 910 [23 L.Ed.2d 223, 89 S.Ct. 1743]; overruled on another ground in *Crownover* v. *Musick* (1973) 9 Cal.3d 405, 431 [107 Cal.Rptr. 681, 509 P.2d 497].)

if Aristophanes' Lysistrata had been performed in a public square during the years of Vietnam, in the classical Greek manner, in masks, but worn for the purpose of disguise, under section 650a, both masked players and police would have had the insuperable burden of determining where the antic muse stopped and political protest began before deciding whether the masks were being worn lawfully.

We therefore hold that section 650a is void on its face for vagueness.

*Section 650a denies equal protection of the laws.*

■ Appellants claim that the distinction in section 650a between anonymous entertainment or amusement and anonymous public issue communication is a violation of the equal protection clause. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) Because section 650a affects fundamental First Amendment rights, it is not clothed with the usual presumption of constitutionality which most legislation enjoys in the face of an equal protection argument. Rather, "*the state* must first establish that it has a *compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are *necessary* to further that purpose." (*People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375].) The state has not met this burden. As discussed above, the state cannot show that section 650a is necessary to a compelling state interest—other statutes safeguard any legitimate law enforcement concerns regarding anonymous public appearance.

Furthermore, the distinction in question cannot survive constitutional scrutiny because rather than regulating the time, place and manner of anonymous activities, section 650a metes out differential treatment based upon the content of the masked person's message. Content control is the essence of forbidden censorship under the equal protection clauses. (*Police Department of Chicago* v. *Mosley* (1972) 408 U.S. 92, 95-96 [33 L.Ed.2d 212, 216-217, 92 S.Ct. 2286]; cf. *Young* v. *American Mini Theatres, supra,* 427 U.S. 50, 63-71 [49 L.Ed.2d 310, 321-327] [no majority].)

Finally, it is noteworthy that, as urged by petitioners, the favoritism shown in section 650a for entertainment and amusement over other protected First Amendment expressions reverses the traditional constitutional priorities which make discussion of public issues the central paramount concern of that amendment (see *Wirta* v. *Alameda-Contra Costa Transit Dist.* (1967) 68 Cal.2d 51, 57 [64 Cal.Rptr. 430, 434 P.2d

982]) for "speech concerning public affairs is more than self-expression; it is the essence of self-government" (*Garrison* v. *Louisiana* (1964) 379 U.S. 64, 74-75 [13 L.Ed.2d 125, 133, 85 S.Ct. 209]).

We hold that section 650a is void on its face because it violates the equal protection clause of the United States Constitution.[5]

*Conclusion.* The People's assertion that this case does not involve the exercise of any First Amendment right is untenable. Underlying, and occasionally surfacing in their briefs and oral argument to this court appears an unfounded fear that the mere appearance of anonymous persons in public will inevitably lead to violence and other illegal activities. If, in a given situation, those fears prove justified, narrowly drawn statutes exist to protect legitimate state interests.[6] But where, as here, anonymous public appearance is related to the exercise of First Amendment rights, the following observation of Justice Tobriner seems apropos: "Protest may disrupt the placidity of the vacant mind just as a stone dropped in a still pool may disturb the tranquillity of the surface waters, but the courts have never held that such 'disruption' falls outside the boundaries of the First Amendment." (*Braxton* v. *Municipal Court, supra,* 10 Cal.3d at p. 146.)

The orders are reversed and the causes remanded with directions to issue the writs.

White, P. J., and Scott, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied February 14, 1979.

---

[5]In light of our holding, it is unnecessary for us to reach the other issues raised by petitioners, namely, that section 650a violates the right of privacy (Cal. Const., art. I, § 1; see *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222]), and that as applied to them section 650a deprives them of their First Amendment free speech rights, in that the mask itself was a symbolic expression of words and ideas.

[6]The ironies of history. The state vigorously defends a statute which, if 205 years ago the Royal Colony of Massachusetts had had an analogue thereof, Samuel Adams and Paul Revere, with their band of colonials disguised as Indians, might never have reached Boston Harbor, the greatest Tea Party in our history would never have occurred, and there, unlike here, there was an intent to do a wrongful act.