[Civ. No. 54155. First Dist., Div. One. Aug. 25, 1982.]

LINDA GATES, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SANTA CLARA COUNTY
JUDICIAL DISTRICT OF SANTA CLARA COUNTY, Defendant
and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Sheldon Portman, Public Defender, and Stuart C. Rich, Deputy Public Defender, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Robert J. Logan, City Attorney, and George Rios, Deputy City Attorney, for Real Party in Interest and Respondent.

**OPINION**

NEWSOM, J.—Appellant, Linda Gates, was arrested for violation of San Jose Municipal Code 10.40.010 (hereafter the ordinance)—loiter-

ing for the purpose of soliciting an act of prostitution. She challenges the ordinance on the grounds it is: (1) preempted by state law which fully occupies the field of criminal sexual conduct; (2) unconstitutionally vague for failure to give fair notice of the conduct it proscribes, and defective in its failure to provide uniform enforcement standards; (3) overbroad in making unlawful conduct protected by the First Amendment; and (4) violates federal and state equal protection guarantees by subjecting "known prostitutes and panderers" to discriminatory treatment.

Respondent People dispute appellant's standing to challenge the vagueness and overbreadth of the ordinance on the ground that her conduct clearly falls within that proscribed by it. Respondent also claims that the ordinance is simply a loitering law—which does not attempt to define criminal sexual conduct, and is thus not preempted by state law. According to respondent, the ordinance is clearly worded, and law enforcement officials are guided in enforcing it by probable cause standards which apply to all arrests. The People further argue that the ordinance does not threaten First Amendment rights and is therefore not overbroad. Finally, the People maintain that the classification of "known prostitutes and panderers" is rationally related to a legitimate government interest and so does not violate equal protection.

A misdemeanor complaint against appellant was filed on October 29, 1980, in respondent Santa Clara County Municipal Court, and assigned case No. C8029340.

Appellant demurred to the complaint, challenging the legality of section 10.40.010. The demurrer was overruled, and appellant filed a petition for writ of prohibition and/or mandamus in the Santa Clara County Superior Court, also denied.

■ Initially, the People raise the issue of appellant's standing to challenge the constitutionality of section 10.40.010.[1] In support of this argument, respondent refers to the settled principle of constitutional law that "one will not be heard to attack a statute on grounds that are not

---

[1]San Jose Municipal Code 10.40.010 has been renumbered and now appears as section 4990. The language was not changed, however, and section 4990—former 10.40.010—provides in pertinent part:

"*Unlawful Conduct.* No person shall remain or loiter in or about any public place for the purpose of soliciting an act of prostitution or lewdness, if such person is a known

shown to be applicable to himself and a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations." (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; and cf. *United States v. Raines* (1960) 362 U.S. 17, 21-22 [4 L.Ed.2d 524, 529, 80 S.Ct. 519]; *Rubio v. Superior Court* (1979) 24 Cal.3d 93, 103 [154 Cal.Rptr. 734, 593 P.2d 595]; *Sussli v. City of San Mateo* (1981) 120 Cal.App.3d 1, 10 [173 Cal.Rptr. 781].)

In *In re Cregler*, supra, 56 Cal.2d at page 313, the rule was applied to preclude a challenge for vagueness—facial and as applied. The court there stated: "Petitioner has not shown that the statute is being invoked against him in the aspects or under the circumstances which he suggests, and hence may not be heard to complain." Thus, the rule applies to challenges both to the face of the statute—vague words affecting fair notice—and "as applied"—vague wording affecting uniform enforcement (*In re Cregler, supra*, at p. 313; *People v. Bratis* (1977) 73 Cal. App.3d 751, 758 [141 Cal.Rptr. 45])—and may apply to overbreadth challenges as well (see *Sussli v. City of San Mateo, supra*, 120 Cal. App.3d 1, 10).[2]

---

panderer or prostitute, nor shall any such person procure or entice another to engage in or commit any act of prostitution or lewdness.

"For purposes of enforcing this section:

"(1) 'Public place' is any area generally visible to the public, including streets, sidewalks, alleys, plazas, parks, driveways, parking lots, automobiles (whether in motion or not), and buildings open to the public, including those which serve food or drink or provide entertainment, and including the driveways and entrances to such buildings or dwellings.

"(2) 'Soliciting' shall mean and include, repeatedly beckoning, stopping or attempting to stop passersby for the purpose of engaging in conversation; and/or repeatedly stopping or attempting to stop motor vehicles by an act of calling out, signalling, waving the arms or other bodily gestures.

"(3) 'Known prostitute or panderer' is a person who, within one year prior to the date of his or her arrest for violation of this section has, within the knowledge of the arresting officer, been convicted of any offense relating to the crime of prostitution or lewd conduct as defined in the California Penal Code or the San Jose Municipal Code...."

The People conceded in respondent court that the last phrase of the final paragraph of this ordinance—"nor shall any such person, procure.or entice another to engage in or commit any act of prostitution or lewdness"—merely duplicates the state's "soliciting" law (Pen. Code, § 647, subds. (a) and (b)) and was stricken from the ordinance by respondent court. Therefore, the remainder of this memorandum shall concern itself only with the first portion of the ordinance.

[2]The overbreadth doctrine may be excepted from the general standing rule where a statute being challenged for facial overbreadth threatens protected First Amendment activity. (*People v. Fogelson* (1978) 21 Cal.3d 158, 163 [145 Cal.Rptr. 542, 577 P.2d

We express no opinion as to whether the standing issue would bar appellant if her case were before us on appeal: here she has challenged the ordinance by way of *demurrer* to the complaint[3]—and we have no factual record before us.

Absent such a record we cannot—as the People urge—deny appellant standing on the grounds that her conduct falls *precisely* within the proscriptions of the statute (*Ghafari v. Municipal Court* (1978) 87 Cal. App.3d 255, 263 [150 Cal.Rptr. 813, 2 A.L.R.4th 1230]; *In re Davis* (1966) 242 Cal.App.2d 645, 667 [51 Cal.Rptr. 702]), without assuming fact finding powers which we think are beyond our jurisdiction.[4]

In like circumstances, in *Aaron v. Municipal Court* (1977) 73 Cal. App.3d 596 [140 Cal.Rptr. 849], the court declared: "Since the attack on the ordinance followed the overruling of the petitioner's *demurrers* to complaints filed against them, there is no factual setting concerning the application of the ordinance. Review is necessarily limited solely to the constitutionality of the provisions of the ordinance as they were adopted and in effect, *not as they might actually be applied.*" (*Id.*, at p. 599, italics added.) Unfortunately, the last-cited phrase is ambiguous. If it be taken to mean "not as the provisions of the ordinance were *actually* applied *to petitioner* in that case," then it supports a "demurrer exception" to the standing rule, and stands as authority for our power to review and resolve the vagueness and overbreadth arguments presented here.

---

677]; *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 611-613 [37 L.Ed.2d 830, 839-840, 93 S.Ct. 2908].)

[3]Appellant filed an appeal to this court from a subsequent order of the Santa Clara County Superior Court denying a writ of prohibition or, in the alternative, mandamus. A superior court order denying a writ of prohibition to restrain a municipal court prosecution under an alleged unconstitutional statute or ordinance is within this court's appellate jurisdiction. (*Bloom v. Municipal Court* (1976) 16 Cal.3d 71 [127 Cal.Rptr. 317, 545 P.2d 229]; *Ross v. Municipal Court* (1975) 49 Cal.App.3d 575 [122 Cal.Rptr. 807].)

[4]The People insist that an evidentiary record is available here: the police report of appellant's arrest which establishes at least probable cause to believe that appellant was loitering for the purpose of soliciting an act of prostitution as proscribed by the ordinance. In fact, the police report does include evidence which tends to establish a violation of the ordinance, several contacts which appellant had with police officers prior to her arrest, an oral admission made by appellant, as well as a prior arrest of appellant for prostitution.

But, the police report has not, at this point in the proceedings, been received as evidence. Since the present appeal is before us from an order overruling appellant's demurrer, we should proceed as if there is a lack of evidentiary matter in the record.

An alternative reading of the pertinent clause in *Aaron* is that our authority is limited to a review of the constitutionality of the ordinance *on its face*; i.e., does it meet the fair notice requirement by being sufficiently definite in its language? Appellant would thus be barred from challenging the constitutionality of the ordinance as it is applied; i.e., the *manner* in which it is enforced. Such an interpretation necessarily restricts our review to the definiteness and clarity of the subject language, and would not permit inquiry into its application, and its vagueness as enforced.[5]

In its holding that a municipal ordinance which outlawed solicitation without a license was "vague on its face" (53 Cal.App.3d at p. 599), the *Aaron* court relied upon cases which found vagueness in the application or enforcement—*Perrine v. Municipal Court* (1971) 5 Cal.3d 656, 661-662 [97 Cal.Rptr. 320, 488 P.2d 648]; *In re Porterfield* (1946) 28 Cal.2d 91, 112 [168 Cal.Rptr. 706, 167 A.L.R. 675]. (*Aaron v. Municipal Court, supra*, 73 Cal.App.3d 596, 607-610) rather than merely facial or abstract vagueness. The offending language was found to present the problem of arbitrary and discriminatory enforcement as well. (*Id.*, at p. 609.) The court did not limit its analysis to "vagueness on its face." (*Id.*, at pp. 607-608.)

We thus read *Aaron* as standing for the rule that, reviewing and overruling a demurrer, we may consider vagueness problems arising from *application* generally and logically following from the terms of the ordinance, but not those which apply precisely and factually to *the* defendant. Plainly, a constitutional infirmity relating to arbitrary and discriminatory enforcement can often be ascertained merely from reading an ordinance.

Language in *Thornhill v. Alabama* (1939) 310 U.S. 88 [84 L.Ed. 1093, 60 S.Ct. 736], supports such an interpretation of *Aaron*. In *Thornhill*, the court stated: "The finding against petitioner was a general one. It did not specify the testimony upon which it rested. The charges were framed in the words of the statute and so must be given a like construction.... In these circumstances, there is no occasion to go behind the face of the statute or of the complaint for the purpose of de-

---

[5] We are mindful that a statute may be so clear in its wording as to apprise individuals of proscribed criminal conduct, but still suffer the infirmity of vagueness as applied, in that it does not provide a uniform standard for enforcement, as discussed *infra*.

termining whether the evidence, together with the permissible inferences to be drawn from it, could ever support a conviction founded upon different and more precise charges.... The State urges that petitioner may not complain of the deprivation of any rights but his own. It would not follow that on this record petitioner could not complain of the sweeping regulations here challenged." (*Id.*, at p. 96 [84 L.Ed. at p. 1099].) The court proceeded to analyze the vagueness argument by examining the statute as enforced.

Our own high court has reached a similar conclusion. In *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636], the constitutionality of Penal Code section 647, subdivision (a), was challenged after declaration of a mistrial. The defendant objected to a retrial on the section 647, subdivision (a) charge on the grounds that the statute was *facially* unconstitutional. The court's review for "*facial*" vagueness included a consideration of both notice and enforcement infirmities which could be ascertained from a reading of the statute (thus supporting the idea that the "vagueness on its face" concept discussed in *Aaron* encompasses such a review).

We think it proper that a review of facial vagueness or overbreadth should include consideration of both notice and enforcement infirmities to the extent that they can be ascertained from reading the statute. Any other rule would preclude a defendant from claiming constitutional defects whenever it is claimed that his conduct falls *precisely* within the statutory proscriptions, in circumstances where the court would be powerless—for lack of an evidentiary record—to assess the true nature of such conduct.

Accordingly, we conclude that appellant has standing to challenge the ordinance on grounds of vagueness and overbreadth to the extent that such infirmities can be detected from a general reading of the statute and its probable, logical application.[6]

Appellant next argues that San Jose Municipal Ordinance 10.40.010 is preempted by state law which regulates the full field of criminal sexual activity. Appellant views the ordinance as a pandering

---

[6]The analysis of appellant's vagueness claim herein will, therefore, be restricted to an examination of constitutional defects which can be ascertained from a reading of the ordinance. The term "vague on its face" will refer to the language of the ordinance and the fair notice requirement. The term "vagueness as applied" will describe the fair enforcement requirement.

and prostitution law, and submits that the area of criminal sexual activity has been preempted by the state.

The People maintain that the ordinance is an antiloitering law, not an ordinance regulating sexual activity; as such, pursuant to appellate decisions which have clearly ruled that the state has *not* fully occupied the field of loitering, it is not preempted.

■ Our high court has established the rule that a local municipal ordinance is invalid if it attempts to impose additional requirements in a field which has been preempted by the general law. (*In re Moss* (1962) 58 Cal.2d 117, 118 [23 Cal.Rptr. 361, 373 P.2d 425]; *In re Lane* (1962) 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897].) A local ordinance is preempted by general state law when the ordinance legislates in an area fully occupied by general law either expressly or by legislative implication. (*In re Lane, supra*, at p. 102; *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681 [3 Cal.Rptr. 127]; *Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 176-178 [339 P.2d 801].)

The enactment by the state of legislation constituting a comprehensive and detailed plan or scheme with respect to a subject reveals, without more, an intent to occupy the field, leaving no room for local regulation, despite the lack of an express declaration to that effect by the Legislature. (*In re Lane, supra*, 58 Cal.2d 99, 104.) If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject is otherwise one properly characterized as a "municipal affair." (*In re Hubbard* (1964) 62 Cal.2d 119, 125 [41 Cal.Rptr. 393, 396 P.2d 809]; *In re Zorn* (1963) 59 Cal.2d 650 [30 Cal.Rptr. 811, 381 P.2d 635]; *In re Lane, supra*.)

■ It is also settled that state law has preempted the field of criminal sexual activity. (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681]; *Yuen* v. *Municipal Court* (1975) 52 Cal.App.3d 351, 355 [125 Cal.Rptr. 87].)

In *In re Lane, supra*, 58 Cal.2d 99, our high court invalidated a city ordinance prohibiting an unmarried person from "resorting" to numerous specified places for the "purpose of having sexual intercourse" or "participating in a lewd act." The court found that the entire field of criminal sexual activity, including prostitution (Pen. Code, § 647, subd. (b)), was preempted by state law providing that any sexual conduct not

criminalized by state penal statutes "shall not be criminal in this state." (*Id.*, at pp. 103-104.)[7]

On this same ground, the court in *Lancaster* v. *Municipal Court, supra*, invalidated a city ordinance making it a misdemeanor for a person to massage a member of the opposite sex as a commercial business. (6 Cal.3d at pp. 807-808.) The court declared: "The constant attention the Legislature has given to the criminal aspects of sexual activity establishes that, in the absence of an express statutory provision to the contrary, this area of the law is intended to be wholly within the control of the Legislature and not subject to local regulation." (6 Cal.3d at p. 808.)

In contrast, local vagrancy and loitering ordinances have generally been upheld as not preempted by state law. (*Yuen* v. *Municipal Court, supra*, 52 Cal.App.3d 351, 356; *Gleason* v. *Municipal Court* (1964) 226 Cal.App.2d 584 [38 Cal.Rptr. 226]; see also *In re Hoffman* (1967) 67 Cal.2d 845, 853 [64 Cal.Rptr. 97, 434 P.2d 353].)

In *Gleason, supra*, the court found that a Los Angeles loitering statute was not preempted by the state vagrancy statute, Penal Code section 647, subdivision (e). The municipal law generally proscribed loitering in tunnels, subways and freeway areas. The court concluded: "It is evident that the Legislature did not intend to occupy the entire field of loitering and preclude local legislation thereon." (226 Cal.App.2d at p. 586.)

More recently, in *Yuen* v. *Municipal Court, supra*, 52 Cal.App.3d 351, this court upheld a San Francisco ordinance which criminalized loitering with a concealed weapon against a preemption challenge. Based upon *Gleason, supra*, the court declared that Penal Code section 647, subdivision (e) "is limited by its terms and applications" (*id.*, at p. 355), such that the ordinance "'supplements the state legislation in a field which we consider the Legislature did not intend to preempt.'" (*Ibid.*)

Consequently, to address the preemption issue in the case before us, it is first necessary to determine what field is being regulated by the San Jose ordinance: loitering, prostitution, or both.

---

[7]Chief Justice Gibson, in *In re Lane, supra*, also stated that "there can be no question that the Legislature has occupied the field with respect to the crime of prostitution." (58 Cal.2d at p. 112.)

The ordinance at issue states: "No person shall remain or loiter ... for the purpose of soliciting prostitution or lewdness ...." Thus, by its terms the ordinance clearly combines elements of both loitering and prostitution. Clearly, however, its purpose is to deter prostitution. It is not enough that a person remain or loiter for *any* unlawful purpose. What is required is that the offender have the *purpose* of soliciting an act made unlawful by either subdivisions (a) or (b) of Penal Code section 647. The objective is prevention of prostitution and pandering, criminal acts which case law tells us are fully prohibited under the state criminal law scheme.[8] (*Lancaster v. Municipal Court, supra,* 6 Cal.3d 805, 807-808.)

Since, however, the ordinance also makes illegal conduct not prohibited by state criminal laws, remaining or loitering for the *purpose* of solicitation, it criminalizes conduct which is not embraced within existing state proscriptions against *actual* solicitation and prostitution.

The newly defined unlawful conduct is purportedly not simply solicitation, but loitering accompanied by acts or circumstances which indicate an intent to solicit an act of prostitution. For purposes of the preemption issue, the important factor is that the ordinance can be violated by conduct which does not amount to actual solicitation for criminal sexual activity.

We have found no case precisely in point.

In *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179 [158 Cal.Rptr. 579], the court considered a municipal ordinance regulating the operation of picture arcades. A permit to operate such enterprises could be denied if the license application had knowingly allowed any sexual acts or solicitations in the arcade within the past two years. The ordinance also prohibited concealed or partially enclosed picture booths.

Finding that the purpose of the ordinance was *not* the regulation of lewd conduct pursuant to Penal Code section 647, subdivision (a) "a matter preempted by state law," the court concluded that the state

---

[8]Loitering statutes are designed to prevent suspected or potential violations of criminal laws, rather than incipient or observable criminal conduct. (*In re Hoffman* (1967) 67 Cal.2d 845 [64 Cal.Rptr. 97, 434 P.2d 353]; *U.S.* ex rel. *Newsome* v. *Malcom* (2d Cir. 1974) 492 F.2d 1166, 1172.)

scheme regulating unlawful sexual conduct had not preempted the subject matter of the ordinance.

Without indicating necessary agreement with the reasoning of *EWAP, Inc.* v. *City of Los Angeles, supra,* 97 Cal.App.3d 179, we find important differences between the two ordinances. Most crucially, in *EWAP* the court dealt with a business which operated not by absolute right, but by privilege. The attachment of reasonable conditions designed to ensure orderly operation of that business for the public protection seems unassailable. And, as the court observed, the "ordinance does not create a new standard of sexual conduct. Nor ... purport to criminalize sexual activity which is not criminal under state law." (*Id.,* at p. 191.)

The same may not be said of the subject ordinance. First, it impinges on the fundamental right of free association. It creates a new category of crime, an indispensable element of which is an intention to violate state laws governing sexual conduct. The ordinance may not be violated except by a person who harbors an intent, a "purpose" of violating existing state statutes proscribing certain sexual activity. It has, in short, no other purpose than the regulation of sexual conduct and it merely attempts to create a new form of sexual crime akin to and yet different from, and vaguer, than criminal attempt.

Accordingly, we think the conduct at issue was intended to be and is preempted by state laws.

Having so concluded, we find it unnecessary to treat in detail the issue of vagueness. We will observe, however, that while the terms of the ordinance seem sufficiently definite to satisfy constitutional standards respecting fair notice (cf. *Rose* v. *Locke* (1975) 423 U.S. 48, 49-50 [46 L.Ed.2d 185, 187-188, 96 S.Ct. 243]), grave problems arise in the enforcement context. No objective standards are described in the ordinance save one—that the offender must possess the status of "known prostitute" or "panderer." For the rest, plenary discretion is given the arresting authority, whose subjective judgment alone would determine whether sufficient "intent" accompanies the act of "loitering" or "remaining" in a public place.

Because it leaves enforcement to subjective and potentially arbitrary evaluation of law enforcement, we think the ordinance violates applicable constitutional requirements. (*U.S.* ex rel. *Newsome* v. *Malcolm, su-*

*pra,* 492 F.2d 1166; *Lawson* v. *Kolender* (9th Cir. 1981) 658 F.2d 1362.)

The judgment is reversed.

Racanelli, P. J., and Bancroft, J.,* concurred.

**RACANELLI, P. J.**—I concur but also conclude that the ordinance as enacted is fatally flawed by reason of its vague and standardless scheme sanctioning or encouraging arbitrary and discriminatory enforcement at the whim of local officials. (*Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156, 170 [31 L.Ed.2d 110, 119, 92 S.Ct. 839]; *Ghafari* v. *Municipal Court* (1978) 87 Cal.App.3d 255, 263 [150 Cal.Rptr. 813, 2 A.L.R.4th 1230].)

---

*Assigned by the Chairperson of the Judicial Council.