MOSK, J.
—I dissent.
The provisions at issue, antisolicitation regulations under City of Los Angeles Ordinance No. 171664 (the ordinance), target a broad range of conduct and speech found by the Council of the City of Los Angeles to be “extremely disturbing and disruptive to residents and businesses.” (L.A. Ord. No. 171664 (preamble).) Although the ordinance is entitled a “Prohibition Against Certain Forms of Aggressive Solicitation,” only a portion of its provisions actually involves “aggressive” conduct; the other provisions restrict or ban a wide variety of expressive activities, no matter how peaceful or passive, including charitable or political solicitation and the sale of newspapers, books, pamphlets, and other items in specified locations (including the area around public transportation stops, public parking lots, and outdoor areas where food is served), on public streets, plazas, and in other public fora.
The majority conclude that the ordinance passes constitutional muster under California’s liberty of speech clause (Cal. Const., art. I, § 2) because it *380 is justified by a content-neutral purpose, i.e., that solicitation, as a category of expression, is inherently more hazardous than other types of speech. According to the majority, the ordinance is not “constitutionally suspect” because it merely imposes time, place, and manner restrictions on protected expression without regard to content. (Maj. opn., ante, at pp. 357, 378.)
I disagree. The ordinance does not restrict only the time, place, and manner of expression. It restricts solicitation precisely because of its content: the identical time, place, and manner of expression is or is not proscribed depending only on what words (or gestures) are used. Plaintiffs offer the following example. A person holding a sign that states “Fight Hunger In Our Community” may freely stand on a public street near a taxi stop in Los Angeles, even if people ask him to leave. Another person holding a sign stating “Fight Hunger In Our Community; Please Donate To Our Church Soup Kitchen” standing in exactly the same place is potentially acting illegally under the ordinance. Both speakers are expressing themselves at the same time and place and in the same manner; the only difference is the content of their speech. The ordinance may be viewpoint neutral because it treats all solicitation the same way; but it is not content neutral because it discriminates between requests for money and offers of goods or services and other speech. It must therefore be reviewed under a strict scrutiny standard. (U.C. Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Laboratory (1984) 154 Cal.App.3d 1157, 1170 [201 Cal.Rptr. 837].)
In my view, the City of Los Angeles cannot justify a categorical prohibition against all solicitation—broadly defined to include speech, the printed word, bodily gestures, signs or other means of requesting an immediate donation or selling goods or services—on the basis that it is inherently disruptive. “Broad prophylactic rules in the area of free expression are suspect.” (N. A. A. C. P. v. Button (1963) 371 U.S. 415, 438 [83 S.Ct. 328, 340, 9 L.Ed.2d 405].) Indeed, the United States Supreme Court cases on which the majority rely are far more limited in scope than the majority suggest. None purported to restrict requests for voluntary donations or the sale of goods or services at locations historically associated with the exercise of First Amendment rights, including the streets, sidewalks, plazas, transportation facilities and other public places in a major metropolis.
Thus, Heffron v. Int'l Soc. for Krishna Consc. (1981) 452 U.S. 640, 655 [101 S.Ct. 2559, 2567-2568, 69 L.Ed.2d 298] involved a rule restricting the sale, exhibit, or distribution of any merchandise, including printed or written material to fixed locations at an annual state fair, a “limited public forum.” *381 The rule addressed conduct—i.e., the manner, not the content, of expression—on the basis that it would interfere with the flow of traffic at the crowded event; without the rule “there would be widespread disorder at the fairgrounds.” (Id. at p. 653 [101 S.Ct. at p. 2567].) The other cases cited by the majority involved restrictions on solicitation in nonpublic fora; in such locations, there is no requirement of content neutrality. (United States v. Kokinda (1990) 497 U.S. 720, 728 [110 S.Ct. 3115, 3120-2121, 111 L.Ed.2d 571]; International Soc. for Krishna Consciousness, Inc. v. Lee (1992) 505 U.S. 672, 679 [112 S.Ct. 2701, 2705-2706, 120 L.Ed.2d 541].) The majority rely for the most part on dictum derived from a plurality opinion in Kokinda and the concurring opinion of a single justice in Lee. (See maj. opn., ante, at pp. 369-372.) I disagree that the limited and divided holdings in these cases “establish” that a restriction on solicitation is content neutral for purposes of the First Amendment so long as the regulation is addressed to the “inherently intrusive and potentially coercive nature of that kind of speech.” (Maj. opn., ante, at pp. 372, 373.)
But, in any event, we are interpreting a constitutional provision “ ‘more definitive and inclusive than the First Amendment’ the liberty of speech clause of article I, section 2 of the California Constitution. (Spiritual Psychic Science Church v. City of Azusa (1985) 39 Cal.3d 501, 519 [217 Cal.Rptr. 225, 703 P.2d 1119].) Our past decisions have broadly proclaimed the independence of the California Constitution and, in particular, the strength of liberty of speech in this state, which guarantees the right of “[e]very person” to “freely speak, write and publish his or her sentiments on all subjects.” (Cal. Const., art. I, § 2, subd. (a), italics added; see, e.g., Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899, 908 [153 Cal.Rptr. 854, 592 P.2d 341]; Dailey v. Superior Court (1896) 112 Cal. 94, 97 [44 P. 458].)
The majority point to “this court’s decisions dating back more than 80 years” for the proposition that requests for the immediate donation of money create distinct problems and risks warranting regulation. (Maj. opn., ante, at p. 356.) The cases involved ordinances requiring junk dealers and solicitors of funds for organized charities to obtain permits, with the aim of preventing the use of fraudulent practices by those collecting funds or property for charitable purposes. (Rescue Army v. Municipal Court (1946) 28 Cal.2d 460 [171 P.2d 8]; Gospel Army v. City of Los Angeles (1945) 27 Cal.2d 232 [163 P.2d 704]; Matter of Application of Dart (1916) 172 Cal. 47 [155 P. 63].) Unlike the ordinance under review, the licensing provisions at issue in those cases did not purport to apply time, place, or manner restrictions to charitable solicitation, let alone sweep an entire category of expression off a public forum. Nor, unlike the ordinance under review, did they impose *382 punishment depending only on what was said. Indeed, contrary to the majority’s implication, these early cases did not involve any challenge at all based on the First Amendment or the liberty of speech clause of article I, section 2 of the California Constitution. (Gospel Army v. City of Los Angeles, supra, 27 Cal.2d at p. 248 [ordinance did not deny religious liberty under Cal. Const. art. I, § 21]; Rescue Army v. Municipal Court, supra, 28 Cal.2d at pp. 470-472 [accord]; Matter of Application of Dart, supra, 172 Cal. 47, 56 [permit requirements invalid as violating the right of free exercise of religion].) Accordingly, they shed no light on the question whether the ordinance at issue here is content neutral; not surprisingly, none of the cases was cited by the parties herein.[1]
Certainly, the City of Los Angeles may penalize disorderly, harassing, and intimidating conduct in a public space, such as obstructing the area in front of an automated teller machine or threatening personal harm. As I stated in my concurring opinion in People v. Fogelson (1978) 21 Cal.3d 158 [145 Cal.Rptr. 542, 577 P.2d 677], government may reasonably regulate “the public conduct of medicants, including those who purport to be motivated by religious fervor ... if the public welfare so dictates.” {Id. at pp. 168-169 (conc. opn. of Mosk, J.), italics added.) The Legislature has done so. (See, e.g., Pen. Code, § 647c [misdemeanor to willfully and maliciously obstruct the free movement of any person on any street, sidewalk, or other public place]; id., § 532d [misdemeanor to make false representations in solicitation of charitable contributions]; id., § 415, subd. (3) [imposing punishment for “[a]ny person who uses offensive words in a public place which are inherently likely to provoke an immediate violent reaction”].)
But I am unpersuaded that all the many kinds of peaceful expression restricted or even banned altogether under the ordinance can be regulated based on the generalization that they inherently cause “problems and hazards.” (Maj. opn., ante, at p. 379.) I doubt that a Salvation Army bellringer *383 or a newspaper hawker generally presents a danger to the public, or that solicitation by a Girl Scout selling cookies is inherently more likely to be disruptive than other types of speech. Nor does the activist holding out a donation cup for a political cause or a homeless person carrying a sign asking for money for food constitute a threat to public health and safety. A person at a public transportation stop or public parking lot can refuse or ignore the request; a pedestrian can simply walk on. Even the more importunate forms of solicitation—panhandlers asking for “spare change” near automated teller machines or bus stops and unkempt persons offering car washing “services” on the public streets—do not invariably pose a safety hazard, although they may be annoying or embarrassing. “Annoyance and inconvenience, however, are a small price to pay for preservation of our most cherished right.” (Wirta v. Alameda-Contra Costa Transit Dist. (1967) 68 Cal.2d 51, 62 [64 Cal.Rptr. 430, 434 P.2d 982].)
As emphasized in Fogelson, “it is important to recognize that individuals in public places cannot expect the same degree of protection from contact with others as they are entitled to in their own homes. ‘ “The man who goes ... to a public place must expect to meet and mingle with all classes of people. He cannot ask, to suit his .caprice or prejudice or social views, that this or that man shall be excluded because he does not wish to associate with them.” ’ ” (People v. Fogelson, supra, 21 Cal.3d at p. 166, fn. 8.)
For these reasons, I dissent.

 The majority overlook Schaumburg v. Citizens for Better Environ. (1980) 444 U.S. 620 [100 S.Ct. 826, 63 L.Ed.2d 73], which calls into question the continued validity of these early cases. In Schaumburg, the United States Supreme Court invalidated an ordinance prohibiting in-person solicitation by use of public streets and public ways by charitable organizations that failed to meet strict requirements for obtaining a permit. The court made clear therein that appeals for funds by charitable or religious groups, whether door-to-door or on-street, involve a variety of speech interests that are within the protection of the First Amendment. (Id. at p. 632 [100 S.Ct. at p. 834].) Any regulation “must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease.” (Ibid.) The village could not, consistently with the First Amendment, “label such groups [as] ‘fraudulent’ and bar them from canvassing on the streets and house to house.” (Id. at p. 637 [100 S.Ct. at p. 836].)