KENNARD, J., Dissenting
speech is often annoying. Just ask any parent.
But in the public forum at least, the people of our state and nation have chosen to accord free speech preeminent constitutional protection. This choice is founded on the belief that on the whole it is more dangerous to empower the government to select what we shall hear than it is to put up with the diversity and cacophony of uncensored and sometimes offensive speech. “ ‘[U]nder our system of government we may not prohibit the dissemination of views simply because they are controversial, distasteful, or disturbing. To sanction such a prohibition “would be a complete repudiation of the philosophy of the Bill of Rights.” [Citation.]’ [Citation.]” (Aguilar v. Avis Rent a Car System, Inc. (1999) 21 Cal.4th 121, 177 [87 Cal.Rptr.2d 132, 980 P.2d 846] (dis. opn. of Kennard, J.).)
That principle is at issue here. To assist it in deciding a case pending before it, the United States Court of Appeals for the Ninth Circuit (Ninth Circuit) has certified this question to us: Under the liberty of speech clause *384 of the California Constitution, does a city ordinance banning various forms of aggressive solicitation and banning solicitation, but not other speech, in certain locations selectively suppress speech on the basis of content?
The ordinance’s aggressive solicitation ban, which addresses noncommunicative conduct and “fighting words” and other forms of speech unprotected by the California Constitution, prohibits aggressive conduct and offensive speech only when they occur in connection with solicitation and not when they occur in connection with speech conveying other messages. The aggressive solicitation ban thus is content based because it uses the content of the speaker’s message to determine whether the speaker is subject to punishment.
The ordinance’s location ban too suppresses speech on the basis of content. At the locations to which it applies, it prohibits speech whose message is a solicitation—including begging, charitable donation solicitation, political donation solicitation, and offers to sell goods or services—but not speech on other topics.
The majority nevertheless concludes that the ordinance is content neutral, not content based. This decision is yet another example of the insensitivity to free speech that appears to be developing in this court. Barely six months ago, this court, over my dissent, approved an injunction censoring disfavored speech in the workplace. (Aguilar v. Avis Rent a Car System, Inc., supra, 21 Cal.4th 121, 176 (dis. opn. of Kennard, J.).) Today, it approves an ordinance that censors disfavored speech in public places. But our right to free speech means little unless it also protects speech we find offensive or annoying. Accordingly, I dissent.
I
Regarding the First Amendment to the federal Constitution, the United States Supreme Court has said: “It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. [Citation.] . . . Discrimination against speech because of its message is presumed to be unconstitutional.” (Rosenberger v. Rector and Visitors of Univ. of Va. (1995) 515 U.S. 819, 828 [115 S.Ct. 2510, 2516, 132 L.Ed.2d 700].)
The same is true under the liberty of speech clause of the California Constitution. Its promise that “[e]very person may freely speak, write and publish his or her sentiments on all subjects” (Cal. Const., art. I, § 2, subd. (a)) is, if anything, an even stronger guarantee against the government’s *385 selective suppression of disagreeable messages, as the majority here acknowledges.[1] (See, e.g., Griset v. Fair Political Practices Com. (1994) 8 Cal.4th 851, 866, fn. 5 [35 Cal.Rptr.2d 659, 884 P.2d 116] [“As a general matter, the liberty of speech clause in the California Constitution is more protective of speech than its federal counterpart.”].)
Because protection against government censorship of messages is fundamental to freedom of speech, a critical inquiry under both the federal and California Constitutions in determining the legitimacy of a governmental restriction on speech is whether the restriction is based on the content of the speaker’s message—in other words, whether the restriction is content neutral or content based. Content-neutral restrictions on the time, place, and manner of speech are permissible under the First Amendment to the federal Constitution and under California’s liberty of speech clause so long as they advance a significant governmental interest, are narrowly tailored, and leave open adequate alternative channels of communication. (Ward v. Rock Against Racism (1989) 491 U.S. 781, 791 [109 S.Ct. 2746, 2753-2754, 105 L.Ed.2d 661]; Metromedia, Inc. v. City of San Diego (1980) 26 Cal.3d 848, 868 [164 Cal.Rptr. 510, 610 P.2d 407], revd. on other grounds (1981) 453 U.S. 490 [101 S.Ct. 2882, 69 L.Ed.2d 800].)
Under the First Amendment, speech restrictions that are content based must meet a higher level of justification than restrictions that are content neutral. “Content-based regulations are presumptively invalid.” (R. A. V. v. St. Paul (1992) 505 U.S. 377, 382 [112 S.Ct. 2538, 2542, 120 L.Ed.2d 305].) “ ‘The government may not regulate [speech] based on hostility—or favoritism—towards the underlying message expressed.’ ” (Turner Broadcasting System, Inc. v. FCC (1994) 512 U.S. 622, 642 [114 S.Ct. 2445, 2459, 129 L.Ed.2d 497], alteration original.) To pass muster under the First Amendment, a content-based speech restriction must serve a compelling governmental interest and must be narrowly tailored to advance that interest while infringing on as little speech as possible. (Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd. (1991) 502 U.S. 105, 118 [112 S.Ct. 501, 509-510, 116 L.Ed.2d 476]; Perry Ed. Assn. v. Perry Local Educators' Assn. (1983) 460 U.S. 37, 45 [103 S.Ct. 948, 954-955, 74 L.Ed.2d 794]; Aguilar v. Avis Rent a Car System, Inc., supra, 21 Cal.4th 121, 179 (dis. opn. of Kennard, J.).) This is known as the strict scrutiny test.
*386 It does not appear this court has decided whether under California’s liberty of speech clause the strict scrutiny test or some other standard applies to determine the validity of a content-based speech regulation.[2]
II
At issue here is an ordinance of the City of Los Angeles prohibiting aggressive solicitation anywhere and banning solicitation at certain designated locations. As I noted earlier, a threshold inquiry in deciding the constitutionality of the ordinance under California’s liberty of speech clause is whether its restrictions are content neutral or content based, for the outcome of that inquiry determines whether the ordinance qualifies for analysis as a “time, place, and manner” restriction. The Ninth Circuit phrased its certified question to us this way: “Is an ordinance that seeks to regulate the time, place and manner of solicitation of money or other thing of value or the sale of goods or services content based under the Liberty of Speech Clause of the California Constitution? Cal. Const. art. I, § 2.” Over my objection, this court reformulated the question this way: “What is the proper standard under article I, section 2(a) of the California Constitution for analyzing the constitutionality of ordinances governing solicitations, such as Los Angeles Ordinance No. 171664?” (Maj. opn., ante, at p. 360.)
The majority never answers its reformulated question. Although the majority sets forth the standard under the federal Constitution for analyzing the constitutionality of speech restrictions, it never articulates the corresponding standard under the California Constitution. Instead, the majority addresses the Ninth Circuit’s original question and concludes simply that “regulations such as the Los Angeles ordinance here at issue, that single out the public solicitation of funds for distinct treatment, should not be viewed as content based or constitutionally suspect” under the liberty of speech clause. (Maj. opn., ante, at pp. 360, fn. 2, 378.) Like the majority, I address the Ninth Circuit’s original question to us: whether the ordinance here is content neutral. Unlike the majority, I also explain what, in my view, the proper standard is for deciding under the California Constitution whether a speech restriction is content neutral or content based.
*387 The United States Supreme Court has faced a similar task in deciding whether speech restrictions are content neutral under the First Amendment to the federal Constitution. An examination of its relevant cases reveals the following principles. “As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.” (Turner Broadcasting System, Inc. v. FCC, supra, 512 U.S. 622, 643 [114 S.Ct. 2445, 2459].) That is, a restriction is not content neutral if its applicability turns on the speaker’s message. (Ibid.; R.A.V. v. St. Paul, supra, 505 U.S. 377, 391 [112 S.Ct. 2538, 2547-2548]; Burson v. Freeman (1992) 504 U.S. 191, 197 [112 S.Ct. 1846, 1850, 119 L.Ed.2d 5].)
A speech regulation may be content based even if the government’s purpose in adopting the regulation is not to censor speech on the basis of content: “[W]hile a content-based purpose may be sufficient in certain circumstances to show that a regulation is content based, it is not necessary to such a showing in all cases.” (Turner Broadcasting System, Inc. v. FCC, supra, 512 U.S. 622, 642 [114 S.Ct. 2445, 2459].) What matters is whether the operation of the restriction is structured so that the instances of speech to which the restriction applies are determined by examining the content of the speaker’s message.
The high court’s decision in Cincinnati v. Discovery Network, Inc. (1993) 507 U.S. 410, 428-430 [113 S.Ct. 1505, 1516-1517, 123 L.Ed.2d 99], illustrates this principle. In Cincinnati v. Discovery Network, Inc., a city banned all newsracks containing commercial solicitation handbills but permitted newsracks with newspapers to remain. The city’s motive was to improve safety and esthetics by reducing the number of newsracks in the city, a content-neutral and noncensorious motive. (Id. at p. 429 [113 S.Ct. at pp. 1516-1517].) Although that neutral motive might have justified a limit on the total number of all newsracks imposed without regard to the contents of the publications within the newsracks, it did not justify a selective ban of only those newsracks containing commercial solicitation handbills. (Id. at pp. 429-430 [113 S.Ct. at pp. 1516-1517]; accord, Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd., supra, 502 U.S. 105, 117 [112 S. Ct. 501, 509] [“ ‘[i]llicit legislative intent is not the sine qua non of a violation of the First Amendment’ ”].) Thus, the selective newsrack ban, although motivated by a neutral purpose, was content based because it depended on the content of the publication within the newsrack. (Cincinnati v. Discovery Network, Inc., supra, 507 U.S. at p. 429 [113 S.Ct. at pp. 1516-1517].)
“By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances *388 content neutral.” (Turner Broadcasting System, Inc. v. FCC, supra, 512 U.S. 622, 643 [114 S.Ct. 2445, 2459].) Speech restrictions are content neutral under the First Amendment if they are “ ‘justified without reference to the content of the regulated speech.’ ” (R. A. V. v. St. Paul, supra, 505 U.S. 377, 386 [112 S.Ct. 2538, 2544].) Typically, content-neutral regulations seek to remedy harms unrelated to the message of the speech they restrict in a manner that does not single out certain messages for disfavored treatment. For example, a restriction on amplified sound in a park is content neutral, even if the restriction will fall more heavily on rock music performances than on opera performances. (Ward v. Rock Against Racism, supra, 491 U.S. 781, 788, 792-793 [109 S.Ct. 2746, 2752, 2754-2755].) The restriction is aimed at controlling the volume, not the message, of the sounds being amplified.
But just as a neutral motive will not save a speech restriction that on its face discriminates on the basis of content, if the government’s motive is to censor then even a speech restriction that is content neutral on its face will be analyzed as a content-based restriction. In the words of the high court: “Our cases have recognized that even a regulation neutral on its face may be content based if its manifest purpose is to regulate speech because of the message it conveys.” (Turner Broadcasting System, Inc. v. FCC, supra, 512 U.S. 622, 645 [114 S.Ct. 2445, 2460].)
These decisions by the United States Supreme Court may be summarized as follows: A speech restriction is content based if by its terms it uses the message conveyed by a particular speech act as the criterion for determining whether the restriction applies to that speech act. A speech restriction is content neutral if the criterion triggering its application is not the message conveyed by the speech act but some other characteristic, such as the medium of communication. Finally, a content-neutral purpose will not save a speech restriction that on its face restricts speech on the basis of its message from being judged as a content-based restriction; nor will a restriction neutral on its face be judged as a content-neutral restriction if the government’s actual purpose is to target certain messages and not others.
Although, as I have noted, California’s liberty of speech clause is a broader protection of speech than is the First Amendment, there does not appear any compelling reason to adopt a different standard of content neutrality for the liberty of speech clause. Content neutrality is only one aspect of the “time, place, and manner” test of permissible speech regulation this court has borrowed from federal constitutional law. It would be anomalous for us to alter, without good reason, the definition of content neutrality while retaining the rest of the test unchanged.
*389 Furthermore, as the high court has noted, there are valid reasons for rejecting a more stringent test that would find any regulation to be content based if it had a more severe impact on speech on one topic than on speech on other topics. Time, place, and manner restrictions are permitted to the extent they are instances of the government attacking some nonspeech harm by a method whose application does not turn on the content of the restricted speech. The test of content neutrality set forth above restricts the government from attacking a nonspeech harm by using disfavored speech as a convenient proxy for the harm (for example, by banning only Ku Klux Klan marches because they are thought more likely to produce violence than St. Patrick’s Day parades). A stricter test, under which a facially neutral speech restriction would be judged as content based if in practice the restriction (like the park’s restriction on amplified sounds at issue in Ward v. Rock Against Racism, supra, 491 U.S. 781, 792-793 [109 S.Ct. 2746, 2754-2755]) falls more heavily on some messages than on others, would cut too broadly. Almost every restriction will have some disproportionate effect on different categories of messages, and such a test would severely restrict the ability of the government to attack nonspeech harms by restrictions that do not distinguish on the basis of message. Other elements of the time, place, and manner test, such as the requirements that the restriction be narrowly tailored and that ample alternative avenues remain available to the speaker, help ensure that a facially neutral restriction is not used as a subterfuge to suppress a particular message. Additionally, even a facially neutral restriction is unconstitutional if the government’s motive is the selective suppression of speech. (Turner Broadcasting System, Inc. v. FCC, supra, 512 U.S. 622, 645 [114 S.Ct. 2445, 2460-2461].)
III
Turning to the city ordinance at issue here, I join the majority in the recognition that solicitation is protected speech under article I, section 2 of the California Constitution. (Maj. opn., ante, at p. 364.) Solicitation is a communicative activity, for a person soliciting seeks to communicate a request for an immediate donation of money or an offer to sell goods or services. Nor is solicitation one of those few narrow categories of communicative activity, like fighting words or obscenity, so inherently harmful that it is unprotected speech and may be banned completely. (See generally R. A. V. v. St. Paul, supra, 505 U.S. 377, 382-386 [112 S.Ct. 2538, 2542-2545]; Spiritual Psychic Science Church v. City of Azusa (1985) 39 Cal.3d 501, 513 [217 Cal.Rptr. 225, 703 P.2d 1119].) Instead, solicitation is a protected communicative activity, both under the First Amendment and under the more expansive scope of California’s protection of everyone’s *390 right to “freely speak, write and publish his or her sentiments on all subjects” (Cal. Const., art. I, § 2). (See United States v. Kokinda (1990) 497 U.S. 720, 725 [110 S.Ct. 3115, 3118, 111 L.Ed.2d 571] (plur. opn.) [“Solicitation is a recognized form of speech protected by the First Amendment.”]; Benefit v. City of Cambridge (1997) 424 Mass. 918, 923 [679 N.E.2d 184, 188] [“peaceful begging constitutes communicative activity protected by the First Amendment”]; Loper v. New York City Police Dept. (2d Cir. 1993) 999 F.2d 699, 704 [begging is communicative activity protected under the First Amendment]; see generally Spiritual Psychic Science Church v. City of Azusa, supra, 39 Cal.3d at p. 512 [art. I, § 2 “ ‘reaches beyond protection of citizen participation in, and ultimate control over, governmental affairs and protects in addition the interest in free interchange of ideas and impressions for their own sake, for whatever benefit the individual may gain’ ”].)
The ordinance here defines the terms “solicit, ask or beg” as including “using the spoken, written, or printed word, or bodily gestures, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services.” (L.A. Ord. No. 171664; L.A. Mun. Code, § 41.59, subd. (a)(1).) I shall hereafter refer to these activities as “solicitation.”
The ordinance reaches not only begging but also charitable solicitation and the sale of publications. It bans solicitation conducted in an “aggressive manner.” (L.A. Ord. No. 171664; L.A. Mun Code, §41.59, subd. (a)(1).) Aggressive solicitation includes approaching, speaking to, or following a person in a manner intended to cause or reasonably likely to cause intimidation or fear of bodily harm, property damage, or property loss; intentionally touching a person or vehicle in the course of soliciting; intentionally blocking or interfering with the passage of a pedestrian or vehicle; using violent or threatening gestures before, during or after solicitation; persisting in closely following or approaching a person after being informed that the person does not want to be solicited or to donate; or before, during, or after solicitation using profane, offensive, or abusive language likely to provoke an immediate violent reaction. (L.A. Ord. No. 171664; L.A. Mun. Code, § 41.59, subd. (b)(2)(A)-(F).)
The ordinance also bans all solicitation in these locations: within 15 feet of an automated teller machine (ATM) or the entrance to a bank or other financial institution; when directed at an occupied motor vehicle located in a public place; in a parking lot or structure after dark; in a public transportation vehicle or within 10 feet of any designated transportation vehicle stop; *391 and in any outdoor or indoor dining area of a restaurant.[3] (L.A. Ord. No. 171664; L.A. Mun. Code, § 41.59, subd. (c)(1)-(4).)
The City of Los Angeles seeks to justify the ordinance as a valid content-neutral restriction on the time, place, and manner of speech. As I noted earlier, such a restriction is permissible so long as it is content neutral, advances a significant governmental interest, is narrowly tailored, and leaves open adequate alternative channels of communication. The question that the Ninth Circuit has certified to us concerns the first of these requirements: whether the ordinance is content neutral.
I first address the ordinance’s aggressive solicitation ban. It prohibits noncommunicative harmful conduct (touching, blocking passage, using threatening gestures, closely following a person); it also prohibits two categories of harmful speech (speech intended or reasonably likely to cause fear of harm or intimidation and “fighting words” likely to provoke immediate violence) unprotected under the state or federal Constitutions. (See R. A. V. v. St. Paul, supra, 505 U.S. 377, 382-386 [112 S.Ct. 2538, 2542-2545].) Although the harmful conduct and speech prohibited by the aggressive solicitation ban are generally prescribable, what makes the ban problematic is that, with one exception, it does not ban these proscribable words and conduct across the board but only when they occur in connection with one category of speech: solicitation.[4] Even when conduct or speech may be prohibited entirely, if the government instead selectively prohibits the conduct or speech only when it occurs in connection with certain messages, the prohibition is content based. (Id. at pp. 383-386 [112 S.Ct. at pp. 2543-2545].) For instance, the government regulates on the basis of content if it bans the burning of crosses only in connection with certain messages (id. at p. 391 [112 S.Ct. at p. 2547]) or if it creates a speed limit applying only to cars with socialist bumper stickers. So too here the aggressive solicitation ban is content based because it prohibits the specified conduct and words only when they occur in connection with solicitation and not in connection with other messages.
Turning to the ordinance’s location ban, it is content based because at specified locations it prohibits only speech asking for a donation or offering *392 something for sale, and not speech on other subjects. Thus, a speaker can approach someone using an ATM and ask for the time, but cannot ask for a quarter. The speaker can ask the ATM user to sign a petition, but not to buy a booklet supporting the position taken by the petition.
The harm the location ban attacks is the distraction, discomfort, or uneasiness the solicitor’s message causes in those who hear it, not some other harm unrelated to the fact that the content of the message is a solicitation. “Listeners’ reaction to speech is not a content-neutral basis for regulation.” (Forsyth County v. Nationalist Movement (1992) 505 U.S. 123, 134 [112 S.Ct. 2395, 2404-2405, 120 L.Ed.2d 101].) That reaction is inherently dependent on the message the speech conveys. Although the government may regulate speech for its harmful “secondary effects” unrelated to the content of its message “ ‘[t]he emotive impact of speech on its audience is not a “secondary effect.” ’ ” (R. A. V. v. St. Paul, supra, 505 U.S. 377, 394 [112 S.Ct. 2538, 2549]; see also Aguilar v. Avis Rent a Car System, Inc., supra, 21 Cal.4th 121, 135, fn. 4 (plur. opn.); id. at p. 147, fn. 1 (conc. opn. of Werdegar, J.); id. at p. 179 (dis. opn. of Kennard, J.) [speech restriction was “based on content because it prohibits speech for its communicative impact—its potential to offend the person who hears it”]; Planned Parenthood Shasta-Diablo, Inc. v. Williams (1994) 7 Cal.4th 860, 890 [30 Cal.Rptr.2d 629, 873 P.2d 1224] (dis. opn. of Kennard, J.) [“restrictions on speech may not be based on how the message affects those who receive it”].) A restriction that “suppresses expression out of concern for its likely communicative impact” is content based. (United States v. Eichman (1990) 496 U.S. 310, 317 [110 S.Ct. 2404, 2409, 110 L.Ed.2d 287].) .
Stated differently, the ordinance’s location ban is content based because the question of whether a statement made in such a location falls under the ordinance’s prohibition depends entirely on the meaning of the statement. Only by examining the meaning of what has been said can it be decided whether the speaker has violated the ordinance.
My conclusion that the location ban is content based finds support in the United States Supreme Court’s decision in Burson v. Freeman, supra, 504 U.S. 191. Burson involved a statute forbidding the solicitation of votes and the display or distribution of campaign material within 100 feet of polling places, but permitting other categories of speech within that zone. (Id. at pp. 193-194, 197 [112 S.Ct. at pp. 1848-1849, 1850].) The high court unanimously concluded that the statute’s location restriction was not content neutral. (Id. at p. 197 [112 S.Ct. at p. 1850] (plur. opn.); id. at pp. 211-214 [112 S.Ct. at pp. 1857-1859] (conc. opn. of Kennedy, J.); id. at p. 216 [112 *393 S.Ct. at pp. 1860-1861] (conc. opn. of Scalia, J.); id. at p. 217 [112 S.Ct. at p. 1861] (dis. opn. of Stevens, J., joined by O’Connor and Souter, JJ.).) In the words of the court: “The Tennessee restriction under consideration . . . is not a facially content-neutral time, place, or manner restriction. Whether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign. The statute does not reach other categories of speech, such as commercial solicitation, distribution, and display.” (Id. at p. 197 [112 S.Ct. at p. 1850].) As in Burson, the location ban in this case is not content neutral because it bans at certain locations only one category of speech while permitting other categories.
Similarly, the high court has held that an ordinance prohibiting newsracks with commercial solicitation handbills while permitting newsracks with newspapers in the same location is a content-based location ban. (Cincinnati v. Discovery Network, Inc., supra, 507 U.S. 410, 429-430 [113 S.Ct. 1505, 1516-1517].) The court explained: “Under the city’s newsrack policy, whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack. Thus, by any commonsense understanding of the term, the ban in this case is ‘content based.’ ” (Id. at p. 429 [113 S.Ct. at pp. 1516-1517].) So too here, in the locations that the ordinance has singled out, whether any particular statement by a speaker falls within the ban is determined by the content of the statement.
Both the Massachusetts Supreme Judicial Court and the United States Court of Appeals for the Second Circuit have concluded that statutes prohibiting begging but not speech on other subjects are content-based restrictions. (Benefit v. City of Cambridge, supra, 424 Mass. 918, 923-924 [679 N.E.2d 184, 188]; Loper v. New York City Police Dept., supra, 999 F.2d 699, 705.) Our own Court of Appeal has likewise concluded that a location ban on solicitation is content based. (Alternatives for California Women, Inc. v. County of Contra Costa (1983) 145 Cal.App.3d 436, 450 [193 Cal.Rptr. 384].)
The conclusion that the ordinance here is content based does not, of course, mean that the ordinance is necessarily unconstitutional under the California Constitution. Determining content neutrality is the beginning, not the end, of analyzing whether a speech restriction is constitutional. For a content-based restriction, the next step is to decide what standard such a restriction must meet to be valid under California’s liberty of speech clause. If the proper test is strict scrutiny, it may well be that some or all of the ordinance’s restrictions can be justified as serving a compelling governmental interest in preventing the harms caused by solicitation in the manner or at *394 the locations specified in the ordinance and as being no broader than necessary to combat those harms. That issue, however, is beyond the scope of the question that the Ninth Circuit has certified to us. Moreover, even if the ordinance is unconstitutional, the City of Los Angeles would not be powerless to address the noncommunicative harms of solicitations. It need only do so by measures that do not single out solicitations for disfavored treatment while leaving other messages untouched (such as a prohibition of all speech at certain locations), or that make no reference to speech at all in their application (such as a prohibition on using profane, offensive, or abusive language likely to provoke an immediate violent reaction whether or not spoken in connection with a solicitation).
IV
In finding the ordinance as a whole to be content neutral, the majority relies on three United States Supreme Court cases decided under the First Amendment: Heffron v. Int'l Soc. for Krishna Consc. (1981) 452 U.S. 640 [101 S.Ct. 2559, 69 L.Ed.2d 298] (Heffron); International Soc. for Krishna Consciousness, Inc. v. Lee (1992) 505 U.S. 672 [112 S.Ct. 2701, 120 L.Ed.2d 541] (Lee); and United States v. Kokinda, supra, 497 U.S. 720 (Kokinda). The majority’s reliance is misplaced, as I explain below.
In Heffron, the high court held that a regulation prohibiting at a state fair the “ ‘[s]ale or distribution of any merchandise, including printed or written material’ ” except at fixed locations approved by the fair was valid under the First Amendment. (Heffron, supra, 452 U.S. 640, 643 [101 S.Ct. 2559, 2562].) The restriction was content neutral because it applied to the medium, not the message. The regulation did not prohibit solicitations not involving merchandise, much less single them out for special treatment; instead, the regulation restricted to fixed locations the entire medium of physical distribution of information. Indeed, all merchandise, not just merchandise embodying a communication, was subject to the same restriction. At one point in its decision, however, the court characterized the regulation as including a content-neutral restriction on solicitations. (Id. at pp. 648-649 [101 S.Ct. at pp. 2564-2565].) Because the restriction in Heffron did not prohibit solicitations, much less single them out for treatment different from that accorded other types of messages, the high court’s conclusory discussion in that case of whether solicitation regulations are content neutral was dictum.[5]
In Lee, the high court’s decision upholding an airport solicitation ban did not address whether such location solicitation bans are content neutral. *395 Instead, it relied on the conclusion that an airport is not a “traditional public forum.” (Lee, supra, 505 U.S. 672, 680 [112 S.Ct. 2701, 2715].) Speech occurring outside of a traditional public forum is not subject to the full range of First Amendment protections. Most significantly, the First Amendment does not prohibit the government from discriminating against speech on the basis of its content if the speech occurs outside of a public forum. (Cornelius v. NAACP Legal Defense & Ed. Fund (1985) 473 U.S. 788, 806 [105 S.Ct. 3439, 3451, 87 L.Ed.2d 567].)
In Kokinda, a plurality of the high court likewise concluded that a post office sidewalk is not a public forum. Accordingly, the plurality’s conclusory statement that a ban on solicitations at that location was not content based was dictum, for that question has nothing to do with the validity of a speech restriction in a nonpublic forum. (See Kokinda, supra, 497 U.S. 720, 736 [110 S.Ct. 3115, 3124-3125].)
I also note that when this court, in deciding questions under the California Constitution, adopts as an analytic tool a test the United States Supreme Court has developed to resolve similar issues under the federal Constitution, this court does not thereby passively and automatically subscribe to all applications of that test by the high court. We remain free to disagree with the high court’s application of the test in various circumstances, even if we agree with its formulation of the test. In matters of state constitutional law, we need not “play Ginger Rogers to the high court’s Fred Astaire—always following, never leading.” (People v. Cahill (1993) 5 Cal.4th 478, 558 [20 Cal.Rptr.2d 582, 853 P.2d 1037] (dis. opn. of Kennard, J.).)
In addition to the three United States Supreme Court cases just discussed, the majority relies on decisions of this court stating in general terms that solicitations are not immune from all regulation: Rescue Army v. Municipal Court (1946) 28 Cal.2d 460 [171 P.2d 8]; Gospel Army v. City of Los Angeles (1945) 27 Cal.2d 232 [163 P.2d 704]; and Matter of Application of Dart (1916) 172 Cal. 47 [155 P. 63]. But, as Justice Mosk’s dissent points out, in none of these cases were solicitation restrictions challenged as violating either the state or federal constitutional guarantees of freedom of speech. Thus, these decisions are plainly inapposite to the question presented here. Moreover, none of those cases addressed a location ban on solicitation or an aggressive solicitation ban of the type at issue here. None suggested that solicitation can permissibly be subject to a location ban or aggressive *396 solicitation restrictions to which no other messages are subject, much less that such an ordinance would be content neutral. Similarly, People v. Fogelson (1978) 21 Cal.3d 158 [145 Cal.Rptr. 542, 577 P.2d 677], another decision of this court the majority cites for the-general proposition that solicitation is not immune from regulation, did not involve a location ban on solicitation or aggressive solicitation ban of the type at issue here.
No one suggests that solicitation must be utterly free of regulation. The issue here, not addressed in these prior decisions of our court, is the much narrower one of whether a government acts on the basis of content when it imposes a location ban on solicitations to which no other messages are subject, or when it punishes otherwise unprotected speech and conduct only in connection with solicitation.
Here, there is no logic to the majority’s leap from the premise that solicitation is not constitutionally immune from regulation to the conclusion that therefore selectively restricting or completely prohibiting solicitation, while permitting all other speech to occur, is never content based. The majority fails to make any careful constitutional analysis of the quite distinct restrictions of the solicitation ordinance at issue here. Instead, it merges them together by referring to the ordinance as one that “single[s] out the public solicitation of funds for distinct treatment” (maj. opn., ante, at p. 378) —an unedifying and generalized description that obscures the different prohibitions the ordinance contains.
The majority also suggests that because the ordinance is not viewpoint based, it is not content based. It asserts that “concerns about government censorship are not raised by a regulation that, responding to the problems and hazards created by the request for an immediate contribution or transfer of money, applies to all solicitation of funds, regardless of the subject matter or viewpoint for which funds are solicited.” (Maj. opn., ante, at p. 377.) But a regulation may be viewpoint neutral and yet still be content based. For instance, a prohibition of all speech on the subject of the Vietnam War would be viewpoint neutral because it suppresses equally all points of view on the war, but it would be content based because it prohibits speech about the Vietnam War but not about other topics. Likewise, here the ordinance’s location ban suppresses all messages of solicitation, whatever the viewpoint, but it permits all other messages to be spoken; and the aggressive solicitation ban punishes certain conduct and words only when they occur in connection with solicitation. Nor do the majority’s asserted “problems and hazards” of solicitation make the ordinance content neutral. As I have explained, government may directly prohibit noncommunicative harms associated with *397 speech but may not single out for suppression one category of speech associated with those harms.
In the end, the majority is left with nothing more than an unadorned and circular conclusion: although this court has never considered the question, the ordinance’s restrictions on solicitation must be content neutral under the liberty of speech clause because we have never said such restrictions are content based.
Conclusion
For many people, being asked on the streets for donations or to buy goods or services is annoying, offensive, disturbing, or depressing. Those adjectives also describe much other speech to which we are unwillingly exposed. “ ‘ “If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.” ’ ” (Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd., supra, 502 U.S. 105, 118 [112 S.Ct. 501, 509].) The same bedrock principle underlies California’s liberty of speech clause. Our liberty of speech clause permits government to regulate the time, place, and manner of speech only if it does so without regard to the content of the speaker’s message. Because the ordinance of the City of Los Angeles prohibits only certain messages and not others at specified locations, and because it prohibits aggressive conduct and unprotected speech only in connection with solicitation, it suppresses speech on the basis of content and is not a content-neutral time, place, and manner regulation.

The liberty of speech clause of the California Constitution, article I, section 2, subdivision (a), states in full: “Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.”

United States Supreme Court Justice Kennedy has suggested that under the federal Constitution content-based regulations should not be judged by the strict scrutiny balancing test but should be generally forbidden, with a few exceptions for obscenity, defamation, and other well-defined categories of traditionally prescribable speech. (See generally Simon & Schuster, Inc. v. Members of N. Y. Crime Victims Bd., supra, 502 U.S. 105, 124-128 [112 S.Ct. 501, 512-515] (conc. opn. of Kennedy, J.) [asserting that, under the First Amendment,. existence of a compelling governmental interest does not legitimize content-based discrimination].)

The ordinance’s location restriction applies not only to traditional public fora like streets and sidewalks but also to other areas like restaurants and private parking garages. To the extent that the ordinance reaches solicitation on private property not subject to the protections of article I section 2 of the California Constitution, it is not objectionable under that constitutional provision. (See Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899, 908-910 [153 Cal.Rptr. 854, 592 P.2d 341] [discussing circumstances in which art. I, § 2 applies to private property].)

The exception is the prohibition on blocking passage of pedestrians or vehicles, which is not linked to solicitation or any other category of speech, and therefore is content neutral to the extent it restricts speech at all.

Additionally, if the United States Supreme Court were faced with the facts of Heffron, supra, 452 U.S. 640, today, it probably would conclude a state fair is not a traditional public forum and therefore speech at a state fair may be restricted by content, given the court’s *395 holdings after Heffron that airports and the sidewalks of post offices are not public fora (Lee, supra, 505 U.S. 672, 680 [112 S.Ct. 2701, 2706]; Kokinda, supra, 497 U.S. 720, 727-730 [110 S.Ct. 3115, 3119-3122]).